**GENERAL ELECTRIC COMPANY, INC., Appellant,**

v.

**Ali Akbar TAALOHIMOINEDDIN, Appellee.**

No. 87–716.

District of Columbia Court of Appeals.

Argued July 11, 1989.
Decided Sept. 25, 1990.

Frank J. Martell, Washington, D.C., for appellant.

Bobby B. Stafford, Alexandria, Va., for appellee.

Before BELSON and TERRY, Associate Judges, and MACK, Senior Judge.[*]

TERRY, Associate Judge:

A jury found General Electric Company (GE) liable for injuries which appellee, a taxicab driver, sustained in a collision between his taxicab and a truck operated by a GE employee. GE contends on appeal that the trial court erred when it (1) refused to allow the truck driver to testify about the disposition of a traffic citation issued to him after the accident, (2) allowed appellee's medical expert to testify about the need for, and the cost of, future medical treatment, and (3) agreed to instruct the jury on unsafe speed, but not on passing on the right. Only the second claim of error has merit, and the error affects only the amount of damages. We therefore affirm the trial court's judgment on the issue of liability, reverse the judgment insofar as it awarded damages, and remand for a new trial on damages only.

I

On January 17, 1983, appellee's taxicab collided with a two-and-a-half-ton Ford truck [1] which was being driven by Maurice Alban, a GE employee who was acting within the scope of his employment. Both vehicles were proceeding eastbound on Q Street, N.W., a one-way street with cars parked in both curb lanes. Appellee was the first to arrive at the intersection of Q and Ninth Streets, where he stopped just short of the crosswalk to wait for a red traffic light to change to green. He testified that there were no cars in front of him when he stopped, but that there was a car

---

[*] Judge Mack was an Associate Judge of the court at the time of argument. She was commissioned as a Senior Judge on December 1, 1989.

1. The truck was described in the testimony as approximately thirty-five feet long with six wheels—single wheels on the front, and double wheels on the rear axle. The truck was a single unit, not a tractor-trailer.

parked at the curb just to the right of his taxicab. Although appellee intended to make a right turn onto Ninth Street, he did not turn while the light was red because a right turn on red was not permitted at that hour.

Maurice Alban testified that when he stopped at the intersection, there were two vehicles in front of him, a car and a pickup truck, waiting for the traffic light to turn green. Although appellee's cab was not one of those two vehicles, Alban did see the cab "up against the curb along the corner of Q and Ninth." Alban turned on his right turn signal to indicate his intent to turn right onto Ninth Street. When the traffic light changed to green, the two vehicles in front of Alban proceeded through the intersection, followed by Alban's truck. As Alban began to make his right turn, he glanced at the side-view mirror mounted on the right side of his truck to see if the way was clear. Seeing neither appellee's cab nor any other vehicle to his right, he continued through the turn at a speed of about five to ten miles per hour.

Mr. Alban said that he was looking in the side mirror and turning when "I hit him." Appellee testified that he did not see the GE truck before the collision, although he did feel the impact when the right rear tires of the truck hit his rear bumper and rolled over the left side of his taxicab. Appellee's head hit the roof, his knee struck the dashboard, and his chest made contact with the steering wheel. As the truck continued turning, it pushed the taxicab into the pedestrian crosswalk.[2] Mr. Alban stopped the truck on Ninth Street a short distance from the point of the collision. He immediately called the police, and Officer Douglas Monk responded.

At trial Officer Monk described eight feet of skid marks going from the point of impact, continuing over the crosswalk, and ending up on Ninth Street south of Q Street. He also saw tire marks on the driver's side of appellee's cab, extending from the rear fender to one of the doors.

The evidence showed that the taxicab sustained damage to its left rear bumper and quarter panel. Appellee suffered injuries to his head, back, neck, shoulder, and knee as a result of the collision.

The jury returned a verdict for appellee and awarded him $100,000 in damages.

## II

GE maintains that the trial court should have permitted it to present evidence about the disposition of a traffic citation issued to its driver. We find no error in the court's refusal to grant such permission.

On direct examination, appellee was asked a series of questions by his counsel about what happened after the collision, *e.g.*, did he feel any pain, did he move his cab before the police arrived, was GE's vehicle moved, and what, if anything, did Officer Monk ask him. After he answered these questions, the following exchange took place:

Q. Now, did there come a time when you left? You left the scene of Ninth and Q Streets, right?

A. After the police finished?

Q. Yes, sir.

A. After the police gave a ticket to the other side—

THE COURT: Just respond to the question, sir.

Counsel for GE did not object to appellee's reference to the traffic citation, and the testimony continued. This was the only mention of a traffic ticket in appellee's case in chief.

Maurice Alban testified for the defense. During his direct examination he was asked, "Now, the plaintiff has testified in this case that the policeman gave you a ticket. Is that right?" Alban responded, "That's right." At a bench conference which immediately followed, appellee's counsel argued that this was an impermissible line of questioning. Counsel for GE countered by saying that he was trying to elicit testimony that the ticket had been

---

**2.** According to Mr. Alban, the collision pushed appellee's cab about four feet from where Alban first noticed it before beginning his turn.

dismissed. The court, having concluded that appellee's unsolicited comment about the ticket was improper, decided to mitigate the effects of this errant remark by prohibiting GE from pursuing this line of questioning entirely and by instructing the jury to disregard all references to a ticket and to assume that no ticket had been issued. The court gave such an instruction, telling the jurors that appellee's volunteered statement about a ticket was stricken from the record. GE contends that, rather than striking from the record all references to the ticket, the trial court should have permitted Alban to testify that the traffic citation had been dismissed.

 The disposition of criminal charges which arise out of the same events leading to a civil suit is generally inadmissible in the civil trial because the jury may regard the result in the criminal case as dispositive on the issue of fault in the civil case. *District of Columbia v. Gandy,* 458 A.2d 414, 415 (D.C.1983); *Stein v. Schmitz,* 137 N.J.L. 725, 727, 61 A.2d 260, 262 (1948) ("The general rule is that the record in a criminal proceeding is inadmissible in evidence in a civil suit"); *see also Edwards v. Bullard,* 131 Ga.App. 34, 37, 205 S.E.2d 115, 117–118 (1974); *Hutchins v. Westley,* 235 So.2d 434, 436 (La.Ct.App.1970). Thus appellee's unsolicited reference to the ticket in the instant case was improper. Counsel for GE, however, failed to object to the remark, either through inadvertence or by design.[3] On appeal GE urges us to ignore the general rule on the inadmissibility of a criminal disposition in a related civil action and to hold that the trial court should have compounded the impropriety by allowing further testimony about the traffic citation. This we decline to do.

In the absence of an objection from GE's counsel, the trial court was not obliged to do anything more than it did. *See Pyne v. Jamaica Nutrition Holdings, Ltd.,* 497 A.2d 118, 126 (D.C.1985) ("[a]ny error in the admission of evidence will generally be deemed harmless if no objection was raised"). The court did admonish appellee for going beyond the scope of the question asked by his counsel. Later, when GE sought to revisit the matter of the ticket, the court exercised its discretion by striking the earlier comment and instructing the jury to disregard all references to a ticket. It is, of course, well established that juries are presumed to follow instructions. *See United States v. Felder,* 548 A.2d 57, 68 (D.C.1988) (citing cases). Since we cannot say that the trial court abused its discretion in handling the matter the way it did, GE is not entitled to reversal on this ground.[4]

### III

In its pre-trial order the court said the following:

> To prevent any possibility of manifest injustice, the pretrial proceedings will be amended to permit proof of future medical expenses in addition to medication, provided plaintiff files with the Court within ten days, the names of any of the seven previously listed physicians who will testify to future medical expenses and a summary of their potential testimony setting forth the medical procedure or treatment and the estimated cost.

> \* \* \* \* \* \*

> ... [P]laintiff may offer proof of future medical expense in addition to fu-

---

3. Counsel for GE may well have made a strategic decision not to object so that evidence of the ticket's dismissal could later be admitted.

4. Even assuming *arguendo* that the court should have given a curative instruction *sua sponte* when the traffic ticket was first mentioned, we will reverse only if the trial court's failure to act resulted in substantial prejudice to GE. *See Pyne v. Jamaica Nutrition Holdings, Ltd., supra,* 497 A.2d at 126; *National Rifle Ass'n v. Ailes,* 428 A.2d 816, 818–819 n. 1 (D.C.1981); Super.Ct. Civ.R. 61 (harmless error).

The evidence on the liability issue was overwhelmingly in appellee's favor; there was no proof that he contributed in any way to the accident. In light of the curative action taken by the court and the record as a whole, we cannot fairly conclude that GE suffered any *significant degree of prejudice when the court* failed to strike the reference to the traffic ticket *sua sponte* as soon as the words came out of appellee's mouth.

ture medication provided plaintiff files with the Court within ten days, the names of any of the seven previously listed physicians who will testify to future medical expenses and a summary of their potential testimony setting forth the medical procedure or treatment and the estimated cost

. . . .

In response to this order, appellee filed a supplement to his pre-trial statement which said that Dr. Ayub Khan Ommaya would testify that appellee would need two tests, *viz.*, a myelogram and a magnetic resonance imaging (MRI) examination, and that if these tests revealed the necessity for surgery, Dr. Ommaya would testify that the medical and hospital expenses connected with the surgery would be about $12,-000. GE did not file any kind of response to this supplemental statement.

■ At trial Dr. Ommaya testified that in his opinion a myelogram and an MRI should be done to see if surgery was needed. Appellee's counsel then asked the doctor what such surgery would cost if it were performed. GE objected to this question on the ground that it called for speculation and conjecture, but the court overruled the objection, ruling that the pre-trial order explicitly permitted such testimony. When his testimony resumed, Dr. Ommaya said that the hospital costs could be as much as $12,000 and the surgeon's fee about $2,000. GE continues to argue on appeal that this testimony was inadmissible because it was too speculative. We agree.

The trial court's reliance on the pre-trial order in this case was misplaced. That order merely directed appellee to file a statement identifying his witnesses on the issue of future medical expenses and summarizing those witnesses' testimony. It did not purport to rule that such testimony would be admissible at trial. The admissibility of evidence is almost always a matter for the trial judge to decide in the context of the trial, after considering the relevant rules of evidence. One such rule is that

evidence will not be admitted if it lacks a proper foundation. That rule was breached in this case.

Dr. Jalalodil Feisee, who examined appellee about a month after the accident and saw him regularly for two years thereafter, testified that in his opinion appellee suffered a cervical and lumbar strain related to the collision. Eventually, in February 1985, Dr. Feisee referred appellee to a specialist when he detected a bulging spinal disc. Dr. Feisee saw him only twice after that.

In the meantime appellee consulted Dr. Ommaya, a neurosurgeon. Ommaya first saw appellee in November 1984, almost two years after the accident; appellee went to him because he "was not improving." Dr. Ommaya conducted a series of tests, including. a neurological examination, and found irritation of the nerve roots, arthritic changes, and bone spurs in the spine, accompanied by chronic pain. These symptoms, in Dr. Ommaya's opinion, were caused by the accident.[5] Thus, when the doctor testified as to the need for a myelogram and an MRI, possibly to be followed by surgery, he was making a reasonable judgment from an adequate medical record.

Dr. Ommaya's testimony, however, also included the following statements:

I felt that [the complaints of weakness] should be investigated further with a definite study [*i.e.*, a myelogram] to see whether there was anything there that needed surgical treatment.

\* \* \* \* \* \*

I never operate on a CAT scan. I saw the patient, and I felt that that study was suspicious of some problem in the back. It required further studies. And my diagnosis is not final until I see a myelogram. . . . We haven't had one done yet, couldn't have had it done.

\* \* \* \* \* \*

My opinion for surgical treatment depends on the myelogram, and the final diagnosis, which is the surgical diagnosis

5. Dr. Ommaya noted that appellee "had no history of any pain problems prior to the acci-

dent." .

whether he needs surgery or not, that depends on the myelogram.

\* \* \* \* \* \*

Until we get a myelogram, I will not be able to assess the problem completely.

From these comments it is plain that Dr. Ommaya could not and would not form an opinion as to the need for future surgery until he at least saw a myelogram. Dr. Feisee testified, moreover, that appellee was afraid of having a myelogram, thus making it unlikely at best that appellee would ever consent to the myelogram which would determine whether surgery might be needed.

Although a claim for future medical expenses need not be proven with mathematical precision, a reasonable basis must exist on which to estimate such expenses. *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C.1982). In this case there was no such reasonable basis. Because no myelogram was ever done, there was no evidence that any future surgery was either necessary or likely to be performed, and hence no foundation for Dr. Ommaya's testimony about the cost of such surgery. The trial court therefore erred in allowing that testimony to be heard by the jury. *See Romer v. District of Columbia, supra*, 449 A.2d at 1100 (trial court correctly refused to allow jury to award damages for future medical expenses because "there was no basis upon which the jury could have reasonably calculated or inferred the cost of [plaintiff's] future medical expenses, if any"); *Wood v. Day*, 273 U.S.App.D.C. 343, 347, 859 F.2d 1490, 1494 (1988) (trial court erred in submitting plaintiff's claim for future medical expenses to the jury when the expert testimony on such expenses was insufficient); *Wilson v. Johns–Manville Sales Corp.*, 221 U.S.App.D.C. 337, 345,

684 F.2d 111, 119 (1982) (a party may not recover for losses arising in the future unless such losses are "reasonably certain").

## IV

At the conclusion of all the evidence, each party asked the court to instruct the jury on selected traffic regulations. The court said that it would instruct on some of the regulations, but not on others. GE challenges this ruling in two respects. First, GE contends that the trial court erred when it agreed to appellee's request that the jury be allowed to consider the pertinent traffic regulation on unreasonable speed.[6] Second, GE maintains that the court incorrectly denied its request that the jury be instructed on a pair of traffic regulations pertaining to passing on the right,[7] which were proposed on the theory that the taxicab was illegally passing the GE truck on the right when the collision occurred. Because GE has failed to make the instructions to the jury a part of the record on appeal, we have no way of knowing what instructions were eventually given, and hence no way of determining whether the actual instructions were right or wrong. *See Cobb v. Standard Drug Co.*, 453 A.2d 110, 111–112 (D.C.1982). To the extent that the issue is properly before us, however, we hold that the court's pre-instruction rulings were correct.

■ It is a well established and "elementary" principle of law that an instruction should not be given if there is no evidence to support it. *Ceco Corp. v. Coleman*, 441 A.2d 940, 949 (D.C.1982) (citing cases). In the instant case there was no evidence whatever that appellee was passing the GE truck on the right or that he even attempt-

---

6. 18 DCMR § 2200.3 (1987) states:
 No person shall drive a vehicle on a street or highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.

7. 18 DCMR § 2202.5(a) (1987) states in pertinent part:
 The driver of a vehicle may overtake and pass upon the right of another vehicle ...

[w]hen the vehicle overtaken is making or about to make a left turn.
18 DCMR § 2202.6 (1987) states:
 The driver of a vehicle may overtake and pass another vehicle on the right only under conditions permitting such movement in safety. In no event shall the passing movement be made by driving off the pavement or main-traveled portion of the roadway.

ed to pass it, either before or during the collision. On the contrary, appellee testified that he had stopped his taxicab at the red light and was standing still, waiting for the green light, when the collision occurred. There was no proof to the contrary. Even Maurice Alban, GE's driver, testified that when he pulled up to the intersection, appellee's cab was stopped in front of him in the right-hand curb lane, and that he never saw the taxicab in motion from that moment on. There was thus no basis in the evidence for a finding, or even an inference, that appellee's taxicab passed the GE truck on the right, and the trial court's refusal to instruct the jury about passing on the right was entirely correct.

█ Likewise, it was not improper for the court to agree to instruct the jury on unreasonable speed. Mr. Alban said that he was going only five to ten miles per hour when he made his turn, but Officer Monk testified that he found eight feet of skid marks going from the point of impact to the point where the truck finally came to a halt. Whether the speed of the truck was unreasonable was a matter for the jury to decide in light of all the evidence, including Officer Monk's testimony. Even though speed may have played only a minimal role in the accident, Monk's testimony at least made the speed of the truck a factor to be considered by the jury in deciding whether Alban was negligent. *See Washington Metropolitan Area Transit Authority v. Jones,* 443 A.2d 45, 50 (D.C. 1982) (en banc).

### V

We find no error affecting the jury's finding of liability, and we affirm that verdict and the portion of the judgment based on it. We hold, however, that the testimony of Dr. Ommaya about the cost of possible future surgery was erroneously admitted. Since that testimony was relevant only to the issue of damages, we reverse the portion of the judgment awarding damages and remand the case for a new trial on that issue.

*Affirmed in part, reversed in part, and remanded for further proceedings.*