Veronica Burns LUCAS,
et al., Plaintiffs,

v.

UNITED STATES ARMY CORPS OF
ENGINEERS, et al., Defendants.

Civ. A. No. 90–3072.

United States District Court,
District of Columbia.

April 9, 1992.

Robert D. Sokolove, Kornblut & Sokolove, Chevy Chase, Md., for plaintiffs.

Richard L. Schwartz and Gregory L. Walsh, Carr, Goodson & Lee, P.C., Washington, D.C., for defendant Cooper–Lecky Architects, P.C.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court is the Motion for Summary Judgment filed by defendant Cooper–Lecky Architects, P.C. ("CLA"). Upon careful consideration of the submissions of the parties, the applicable law, and the entire record herein, the Court shall grant the defendant's Motion for Summary Judgment, because it finds that there are no material facts in dispute and that CLA is entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 56.

### I. Background

The plaintiffs are a team of architects and landscape architects who won a government-sponsored competition for designing a memorial to honor the members of the Armed Forces who served in the Korean War. Their team is known collectively as Burns Lucas, Leon, Lucas Architects ("BL3"). The war memorial is the last memorial planned to be located on the National Mall in Washington, D.C.

The memorial was authorized by Congress through Public Law No. 99–572, 100 Stat. 3226 (1986), which created the Korean War Veterans Memorial Advisory Board ("Advisory Board"), composed of twelve distinguished Korean War veterans appointed by the President. The Advisory Board, in conjunction with the ABMC and the United States Army Corps of Engineers ("Corps"), sponsored the national competition for designing the memorial. The competition rules provided that the winning design had to be approved by the reviewing agencies before the design could be constructed. The competition also provided that the winner of the design competition would be retained in a consultant capacity under a separate contract with the architecture/engineering firm selected by the Corps of Engineers to implement the design.

The plaintiffs won the competition. Between June and August of 1989, the reviewing agencies gave preliminary approval to the plaintiffs' design, subject to various reservations. About mid-October 1989, defendant CLA was chosen as the architectural firm for implementation of the project. Consistent with the design competition rules, CLA retained the plaintiffs as consultants for the implementation of the design. A contract for consulting services was executed between CLA and BL3 on May 9, 1990. The contract incorporated a letter dated April 12, 1990 between William P. Lecky of CLA and Veronica Burns Lucas of BL3.

The plaintiffs allege that the Advisory Board worked in conjunction with CLA to alter the plaintiffs' design by developing the so-called "delta scheme". A design based on the delta scheme was presented to and rejected by the reviewing agencies. The plaintiffs contend that the delta scheme so altered the plaintiffs' design as to constitute a completely new design.

The plaintiffs allege that CLA breached its contract with BL3 by failing to consult with it on matters in a timely manner, failing to seek consultation from BL3 in a "meaningful way", and by substituting its own design for the winning design. Complaint ¶ 44. They also allege that BL3 was an intended third-party beneficiary of the contract between CLA and the Army Corps of Engineers ("Corps") and that they were damaged by CLA's alleged failure to consult with BL3 in a timely, meaningful way, its failure to "abide by" the consultation of BL3, and its alleged abandonment of the effort to implement the winning design in favor of implementing a new design of its choice. Complaint ¶¶ 48–52.

On October 24, 1991, this Court granted the federal defendants' Motion for Sum-

mary Judgment, holding that the active involvement of the Advisory Board did not exceed their statutory authority. The Court then ordered the defendant Cooper–Lecky Associates to show cause whether the case should be dismissed regarding the claims against it. In response, CLA filed what is essentially a Motion for Summary Judgment.[1] CLA argues that the plaintiffs have failed to point to any facts showing that CLA breached any duty owed to them under the unambiguous language of its contracts with either the Corps or the plaintiffs. Moreover, CLA argues, any damages are purely speculative.

## II. Analysis

Summary judgment is awarded when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Where there is a properly supported motion for summary judgment, the adverse party may not rest upon the "mere allegations or denials" of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); see Lujan v. National Wildlife Federation, 497 U.S. 871, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990). However, it is well established that the Court must believe the non-movant's evidence and draw all justifiable inferences in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

A factual dispute must be material in order to preclude summary judgment; that is, it must be a dispute that may affect the outcome of the suit under the governing law. Liberty Lobby, 477 U.S. at 248, 106 S.Ct. at 2510.

■ There does not seem to be a dispute between the parties that the correct law to apply in this federal question and diversity action is that of the District of Columbia.

See Def.'s Resp. to Show Cause Order at 4–5; Pl.'s Opposition generally. The Court agrees that it should apply the law of the jurisdiction with the stronger interest, and that in this case, that jurisdiction is the District of Columbia, which is CLA's principle place of business and the site of the future memorial at issue. See Packer v. Kaiser Foundation Health Plan of Mid–Atlantic States, Inc., 728 F.Supp. 8 (D.D.C. 1989).

■ In construing a contract, the Court should give effect to the mutual intentions of the parties. NRM Corp. v. Hercules, Inc., 758 F.2d 676, 681 (D.C.Cir. 1985). Intent is construed by an objective standard and evidenced from the words of the contract itself. The subjective intent of the parties is not controlling. Haralson v. Federal Home Loan Bank Board, 655 F.Supp. 1550, 1554–55 (D.D.C.1987). When the language of a contract is "clear and unambiguous on its face, a court will assume that the meaning ordinarily ascribed to those words reflects the intentions of the parties" and need not look to extrinsic evidence in interpreting it. NRM Corp. at 681–82.

In the Complaint the plaintiffs allege breach of contract against CLA both under the BL3–CLA contract and as a third-party beneficiary of the contract between CLA and the Corps. However, the plaintiffs apparently have abandoned their third-party beneficiary claim. See Pl.'s Opp. at 7. Therefore, the Court shall analyze only their rights under the contract between BL3 and CLA.

■ According to the plaintiffs, "[t]he thrust of BL3's breach of contract action against CLA is that CLA specifically failed and refused to allow BL3 to clarify and alter or modify its design, as CLA, not CLA and BL3, carried 'the project through

---

1. CLA styled its pleading "Response to Show Cause Order", but requested summary judgment therein. While in substance a summary judgment motion, the pleading was not accompanied by a statement of facts not in dispute as required under Local Rule 108(h). While the plaintiffs objected to this deficiency, they neglected to file any counter statement of material facts in dispute as required of them under Local Rule 108(h). Because the Court believes it has all of the essential information before it to rule on the instant motion, it shall do so rather than exalting form over substance and delaying resolution of this matter on the basis of each side's formal deficiencies.

the various phases'." Pl. Opp. at 4. Even if this allegation is correct, however, the Court finds that under the unambiguous language of the contract between CLA and BL3, there was no duty owed the plaintiffs under the contract that was breached by this behavior.

In the April 12, 1990 letter from William Lecky of CLA to Veronica Burns Lucas of BL3 (incorporated into the contract), Mr. Lecky described BL3's role as follows: "we [CLA] will be looking to you [BL3] for clarification of the conceptual intent as we carry the project through the various phases that lie ahead." Letter dated April 12, 1990 at 2. Mr. Lecky also stated in the letter that CLA would "undertake an intensive design charette to modify the design (where and if necessary) and then present these to the Corp for review and approval." *Id.* While Mr. Lecky stated that it was CLA's "hope and intent to include BL3" in the design development process, he went on to state:

> However, I would be remiss if I did not voice some of our concerns about potential conflicts. As you know, the Corp and/or the Advisory Board may have certain opinions and objections about the final design that may vary from BL3's. Cooper–Lecky may have opinions that vary from either the Corp's or BL3's. I don't have anything particular in mind, but we bear the ultimate responsibility for all aspects of the contract so if such a conflict should arise, we must have the authority to resolve it.

*Id.* at 2–3. The May 9, 1990 contract letter also stated that the CLA–BL3 contract would be governed by CLA's contract with the Army Corps of Engineers, and that the CLA–Corps contract would be binding upon BL3 as consultant to the project. May 9, 1990 contract at 2.

Thus by the plain language of the contract, it is clear that while BL3 was retained to provide consultation on its conceptual intent, CLA had the authority to decide any disagreements, or, in effect, to disregard BL3's advice. The contract is also clear that changes to the design were contemplated from the outset.

It is undisputed that at least some conversations were held between BL3 and CLA regarding modifications and alterations to the design. Complaint ¶ 30. The plaintiffs argue, however, that their input was disregarded, and that they were not given an opportunity to contribute during a critical phase of redesign, and that these allegations create a genuine factual dispute. Pl. Opp. at 4–5. Yet these allegations are irrelevant because the plain language of the contract imposes no duty on the CLA to consult with the plaintiffs with any particular frequency or regarding any particular issues, and the contract expressly gives CLA the authority to disregard BL3's advice.

The plaintiffs point to isolated passages of the contracts in an attempt to find support for their position that CLA had a duty to utilize their services to a particular degree. These passages, however, fail to demonstrate any duty or even any ambiguity in the contracts. First, the plaintiffs note that the contract between CLA and the Corps (which controlled the CLA–BL3 contract), mandates that the concept design of the Korean War Memorial must "be complete enough, thoroughly express the designer's intentions, define all major systems, and provide a firm basis for estimating the cost ..." Pl. Ex. B at C–3. The plaintiffs contend that the "designer" in this passage is BL3 and that the passage implicitly assumes active involvement of BL3 in the development of the concept design. However, reading the contract in context it is clear that the "designer" in the passage is CLA, the entity charged with developing the concept design. The passage directs CLA to create a concept design specific enough to make clear its own intentions. *See* Def. Reply at 4 & n. 1.

Plaintiffs also rely upon a provision in the CLA–Corps contract which provides that the design analysis report must be complete and organized "so that anyone who is familiar with the project can follow the AE [CLA] interpretation of developing the winning concept design on a step by step basis." Pl. Ex. B at C–12. The plaintiffs argue that this passage indicates that

the Corps contemplated significant involvement of BL3 in the design development. This argument is not persuasive because the passage imposes only a duty upon CLA to provide a detailed design analysis report to the Corps. It is undisputed that the final design was to be based on BL3's design; this passage says no more than that.

▉ The plaintiffs also note that the "Contract Clarifications" included in the CLA–BL3 agreement provide that the basic fee was based on developing contract documents for the design as it then existed, and that "[i]f there should be significant alterations or redesign required, we would enter into renegotiations in accordance with the extent of such changes." Pl.Ex. A at 4, ¶ 1. Plaintiffs argue that since the design was altered and no renegotiations with plaintiffs occurred, CLA breached the contract. The Court is not convinced. Rather, this passage indicates that should CLA have needed more extensive involvement of BL3 than that contemplated when the basic fee was negotiated, renegotiations would take place. Since CLA apparently never had the need for these additional services, no renegotiation was necessary. The contract does not require that CLA solicit a particular quantity of work from BL3, and the Court sees no justification for implying such a duty.

Even if, *arguendo*, the defendant CLA did breach its contract with BL3, BL3 has failed to demonstrate any damages that are not speculative. BL3 performed services for CLA and was paid $42,450 in consideration for that work. The plaintiffs argue that they were entitled to earn $54,000 under the contract (the base fee of $42,450 plus reimbursement for travel, expenses and meetings), and possibly to earn $20,000 for additional work. *See* Complaint ¶ 43. However, the contract did not require CLA to have BL3 travel or attend meetings, and BL3 does not claim to have incurred travel or meeting expenses for which it was not reimbursed. Therefore, $42,450 was all that BL3 earned under the contract. Moreover, while according to the plaintiffs approximately $20,000 in additional work was

contemplated in the contract, the contract states explicitly that future work, while "hopefully" to be negotiated in the future, is "not included as a part of this agreement". May 9, 1990 contract at 3, ¶ VI. Therefore CLA was neither obligated to enter into additional work contracts with the plaintiffs nor to pay them additional funds.

▉ Plaintiffs primarily seek damages for the loss of good will and diminution in their professional reputation that they allege will result from the design change. They contrast this loss with the "worldwide renown and professional advancement" they anticipated upon winning the design competition and having their design implemented. Complaint ¶ 52, 45. While the Court is sympathetic with these concerns, these damages are merely speculative. In the plaintiffs' words:

> [the] breach changed the entire course of the design/development process. It became the vehicle by which the Corps and the other Federal Defendants commenced their review of the "new design" and served as the catalyst for this litigation. Had CLA timely involved BLC, as it was contractually bound to do in its new design preparations, the "course of history" *may* not have changed, the parties *may* have reached an architectural "accommodation" satisfactory to themselves and the Federal Defendants, and this litigation *may* not have been necessary.

Pl.Opp. at 5 (emphasis added). It is clear from the contract documents that changes to BL3's design were contemplated from the outset. *See* pp. 6–7, *supra*. Even if CLA had involved BL3 in the process to the degree BL3 would have preferred, the design result could still have been the same. The speculative nature of plaintiffs' allegation is further demonstrated by this Court's prior ruling, in which it held that "the federal defendants were not bound by statute to any particular design at any particular point." Memorandum Opinion filed October 23, 1991 at 10. Thus even if CLA had presented the Advisory Board with a design perfectly consonant with

BL3's conception, the Advisory Board could have rejected it in favor of a different design.

The Court is sympathetic to the frustrations experienced by the plaintiffs in this case. However, these frustrations do not in and of themselves give rise to a legal remedy. Under the plain language of the contractual documents, CLA did not breach any legal duty owed to the plaintiffs. Even if there had been such a breach, the plaintiffs' theory that this alleged breached caused substantial damage is purely speculative. Thus there are no genuine disputes as to material facts here, and the defendant Cooper–Lecky is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56.

### III. Conclusion

For all of the foregoing reasons, the Court shall grant the defendant Cooper–Lecky Architects' Motion for Summary Judgment and shall dismiss this case from the dockets of this Court.