**VECTOR REALTY GROUP, INC., Appellant,**

v.

**711 FOURTEENTH STREET, INC., Appellee.**

Nos. 92–CV–1092, 92–CV–1273.

District of Columbia Court of Appeals.

Argued Dec. 17, 1993.

Decided Sept. 22, 1994.

David J. Branson, Washington, DC, for appellant.

David G. Leitch, with whom George H. Mernick III, Robert B. Duncan and Pierre M. Donahue, Washington, DC, were on the brief, for appellee.

Before STEADMAN and KING, Associate Judges, and MACK, Senior Judge.

Opinion for the court by Senior Judge MACK.

Dissenting opinion by Associate Judge STEADMAN at 234.

MACK, Senior Judge:

Vector Realty Group, Inc. ("Vector"), a commercial real estate brokerage firm, appeals from the judgment of the trial court following its action against Cafritz, *et al.,* owners of real property at 711 14th Street,[1] for a breach of a commission agreement which Cafritz challenged as having been induced by fraud. In this court,[2] Vector argues that the jury, having found no fraudulent inducement, was permitted, because of erroneous instructions by the trial court, to award an inadequate amount for damages for breach of contract. It also argues that the trial court erred in denying its motion to amend the judgment or in the alternative to grant a new trial. Finding merit in Vector's position, we reverse and remand with the direction that the trial court enter a judg-

---

1. The trial court granted a directed verdict dismissing appellant's breach of contract claim against Conrad Cafritz, Barry Stern, Robert Moran, and a partnership. Thus, 711 Fourteenth Street, Inc. is the appellee in this court.

2. A cross-appeal (No. 92–CV–1361) has been voluntarily withdrawn pursuant to D.C.App.R. 41(b) (1993).

ment for Vector in the amount of $239,-739.11.[3]

## I.

After two years of negotiation, appellee 711 Fourteenth Street, Inc., through its agents, entered into an agreement on October 23, 1989, with appellant Vector in which appellee agreed to pay one-half of Vector's $617,462.31 commission for procuring a tenant for appellee's vacant office building located at 711 14th Street, Northwest, in the District. The other half of Vector's commission was to be paid by a third party, Manufacturers Real Estate ("Manufacturers") which sought to move its tenant (the District Government) from another location to the 14th Street address. The letter agreement, which was signed by appellee through its agent Conrad Cafritz, provided the payment of Vector's commission as follows:

Vector has earned a real estate brokerage commission due and payable on the following terms and conditions:

$137,984.08 is immediately due and payable.

$137,984.08 is payable upon initial occupancy by the District of Columbia as tenant.

$341,494.15 is payable upon the earliest to occur of (i) a final and unconditional commitment by the District of Columbia to purchase the property for an amount which has substantially the same economic effect as the purchase option, or (ii) the final and unconditional exercise of the option to lease for the second five year term under the lease by the District of Columbia Government.

Manufacturers and [appellee] will split payments of the fees equally.[4]

After receiving its copy of the above agreement, Manufacturers contacted Vector and, in exchange for its promise to include Vector

in future business dealings, requested a $102,475.12 discount from its portion of the commission owed. Vector agreed and entered into a discounted commission agreement with Manufacturers on November 24, 1989. In the interim, appellee had made the first payment of $68,992.04 (½ of $137,984.08 which was due immediately) in accordance with the October 19, 1989 agreement. However, appellee failed to pay the remaining $239,739.11 [5] owed to Vector due to financial difficulties. Vector filed suit against appellee for the amount of the unpaid commission. Upon discovering the discounted commission agreement between Vector and Manufacturers, appellee filed a counterclaim asserting that it had been fraudulently induced to enter into the commission agreement. Appellee contended that it was led to believe Vector's commission would be split equally with Manufacturers and since this was not the case, the commission agreement with Vector was voided.

At the close of the evidence, the trial court instructed the jury that it had found as a matter of law that Vector provided a service to appellee and that it was entitled to a commission. After considering the respective special verdict forms submitted by the parties, the trial court refused to submit Vector's proposed instructions to the jury; those instructions provided that if the jury did not find fraudulent inducement in the formation of the October 19, 1989 agreement, then Vector was entitled to recover from appellee the portion of the amount of its commission that was agreed upon according to the October 19, 1989 agreement, i.e., $239,739.11. Over Vector's objection, the trial court instead submitted appellee's special verdict form which provided:

(1) Do you find that the [appellee] was fraudulently induced to sign the October

---

3. This figure accounts for the balance of the commission owed to Vector according the brokerage agreement. See note 5, *infra*.

4. This language is excerpted from a letter agreement dated October 19, 1989.

5. This amount represents the remaining portion of the commission owed to Vector according to

the October 19, 1989, agreement as the District government entered into a lease agreement with appellee. The October 19, 1989, commission agreement provided that $68,992.04 (½ of $137,-984.08) was due upon the District government's initial occupancy and $170,747.07 (½ of $341,-494.15) was due upon the exercise of the option to lease for the second five-year term. These combined amounts total $239,739.11.

19, 1989 letter and to make partial payment under that letter by misrepresentations made by Vector?

YES ___ (If your answer to this question is "yes," answer only Question 4.)

NO ___ (If your answer to this question is "no," answer only Question 2 and 3.)

(2) If you find that the [appellee] was not fraudulently induced to sign the October 19, 1989 letter, do you find that Vector is entitled to any additional payments from the [appellee]?

YES ___

NO ___

(3) If the answer to Question No. 2 is "yes," how much additional payment do you find Vector is entitled to from the [appellee]?

$_____

(4) If you find that the [appellee] was fraudulently induced to sign the October 19, 1989 letter and make partial payments under it by misrepresentations on the part of Vector, is the [appellee] entitled to a refund from Vector of the $68,922.04 already paid to Vector?

YES ___

NO ___

The jury found no fraud was perpetrated and returned a verdict in favor of Vector for $44,751.93, approximately $194,987.18 less than the unpaid commission ($239,739.11) provided for in the October 19, 1989 agreement. See note 5, *supra*. Vector filed a post-verdict motion requesting an amendment of the judgment for the amount due under the October 19, 1989 agreement or a new trial on the issue of damages in the alternative. The trial court denied the motion and subscribed to appellee's theory that the award represented the difference between an earlier commission proposal of $320,000 which was submitted by Vector on August 1, 1988, and the amount already received from Manufacturers and appellee. Vector appeals from this ruling.

## II.

■ Absent a finding of abuse of discretion committed by the trial court, the denial of a motion for a new trial will not be disturbed on appeal. *See Bernard v. Calkins*, 624 A.2d 1217, 1219 (D.C.1993); *Bell v. Westinghouse Elec. Corp.*, 483 A.2d 324, 327 (D.C. 1984). It is also recognized that a trial court's decision to uphold a jury verdict is rarely reversed on appeal. *Bernard, supra*, 624 A.2d at 1220. However, a new trial or an amendment to a judgment is warranted when a jury award " 'is so inadequate as to indicate prejudice, passion or partiality on the part of the jury, or where it must have been based on oversight, mistake or consideration of an improper element.' " *Id.* at 1219–20 (quoting *Hughes v. Pender*, 391 A.2d 259, 263 (D.C. 1978)).

■ Vector asserts that the special verdict form and the trial court's instructions were prejudicial and resulted in the jury awarding inadequate damages. Viewing the special verdict form presented to the jury, we note that the form referred only to the October 19, 1989, letter as the contested commission agreement and included appellee's claim of fraudulent inducement as its defense against the validity of this agreement. However, instead of specifying the amount due pursuant to the October 19, 1989 agreement, the verdict form provided a blank space for the jury to enter whatever amount that it believed Vector was entitled to receive from appellee. This was not a task properly delegated to the jury for speculation. Damages flowing from a breach of contract require reference to the contract itself. See note 8, *infra*.

Further, we note that the trial judge instructed that he had found as a matter of law that the parties entered into an agreement and that, in the absence of a finding of fraudulent inducement, the jury must determine whether the parties were contractually bound by the October 19, 1989 agreement or by some other agreement. We find no justification in this record for the giving of the last clause and this instruction. The pleadings, evidence, and arguments presented at trial all centered on Vector's claim that appellee breached the commission agreement dated October 19, 1989, and appellee responded to this claim by asserting that it had

been fraudulently induced by Vector.[6] The verdict form itself connotes the issues that were disputed by the parties at trial. Moreover, appellee never presented a defense that the parties entered into a different contract. As such, the trial court's instruction to the jury that it may look to "some other agreement" was not warranted. "[A]n instruction should not be given if there is no evidence to support it." *General Elec. Co. v. Taalohimoineddin,* 579 A.2d 729, 734 (D.C.1990) (citing *Ceco Corp. v. Coleman,* 441 A.2d 940, 949 (D.C.1982)); 17A C.J.S. *Contracts* § 633(a) (1963). The trial court should instruct the jury according to the issues raised at trial and refrain from reforming appellee's case. *See generally G & M Inc. v. Huffman,* 170 A.2d 239, 240 (D.C.1961) (trial court erred in submitting case to the jury on a different theory which had not been argued by the parties at trial).

Appellee contends that no error was committed by the trial court in rendering its instructions as it was entirely proper for the jury to determine when the parties' agreement had been formed and the terms of the agreement. This contention may have some merit if appellee had argued and presented some evidence at trial that the October 19, 1989 letter agreement did not represent the parties agreement. On the contrary, the testimony given at trial by Robert Moran and Barry Stern, agents of the appellee and codefendants at trial, indicated that they had agreed to pay the commission fee provided in the October 19, 1989 agreement. Since the pleadings and evidence in the record reveal that appellee relied solely upon a fraudulent inducement defense to challenge the validity of the October 19, 1989 agreement, it is not appropriate at this juncture to inject a different defense theory which was not presented at trial. *See generally Easter Seal Soc'y for Disabled Children v. Berry,* 627 A.2d 482, 488–89 (D.C.1993) (there is a presumptive rule that this court will not consider questions raised for the first time on appeal);

*Adams v. A.B. & A., Inc.,* 613 A.2d 858, 861 (D.C.1992) (issues not raised by the pleadings may still be adjudicated provided those issues are actually tried by the parties by express or implied consent); *see also Washington Welfare Ass'n, Inc. v. Poindexter,* 479 A.2d 313, 316 (D.C.1984); *Hackes v. Hackes,* 446 A.2d 396, 398 (D.C.1982).

Similarly, we find no merit in appellee's assertion that the evidence sufficiently supports the jury's award based upon a commission proposal dated August 1, 1988. Even if the amount provided in the proposal could reasonably explain the jury's calculation of the award, this does not overcome the fact that appellee neither argued nor introduced any evidence at trial to support its proposition (first asserted after the jury's verdict) that the August 1, 1988, proposal represented the parties' commission agreement. As we have indicated, " 'parties may not assert one theory at trial and another theory on appeal.' " *D.D. v. M.T.,* 550 A.2d 37, 48 (D.C.1988) (quoting *Hackes, supra,* 446 A.2d at 398); *see also Redding v. Capitol Cab Co.,* 284 A.2d 54 (D.C.1971). In addition, viewing the express language of the August 1, 1988 correspondence [7] to appellee which was neither signed nor executed by appellee, it appears that Vector was merely submitting a commission proposal to appellee based upon the expected value of the lease at that particular time. As such, neither the "[c]ourt [nor the jury can] compel [Vector] to accept contract terms to which that party has never agreed." *Brown v. Pro Football, Inc.,* 782 F.Supp. 125, 137 (D.D.C.1991). For these reasons, we reject appellee's claim that the jury award is supported by the evidence in the record.

Given that appellee's fraudulent inducement claim was rejected by the jury and the trial court found, as a matter of law, the existence of a contract and the evidence in the record related only to the October 19, 1989 agreement, the only reasonable conclu-

---

6. We also note that the trial court recognized that the October 19, 1989 letter was the original contract that gave rise to Vector's lawsuit.

7. In construing a contract, the parties' mutual intentions should be given effect. "Intent is construed by an objective standard and evidenced

from the words of the contract itself." *Lucas v. United States Army Corps of Engineers,* 789 F.Supp. 14, 16 (D.D.C.1992); *see also Howard Univ. v. Best,* 484 A.2d 958, 967 (D.C.1984), *rev'd in part and remanded,* 547 A.2d 144 (D.C.1988).

sion to be drawn is that the October 19, 1989 agreement was enforceable. Thus, as a matter of law, Vector was entitled to receive $239,739.11, the remaining amount owed under the October 19, 1989 agreement. Consequently, we find that the jury's award of $44,751.93 is erroneous as it is approximately $194,987.18 less than the $239,739.11 owed under the parties' agreement. "Damages may not be based on mere speculation or guesswork. The evidence offered must form an adequate basis for a reasoned judgment." *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C.1982) (citing *Palmer v. Connecticut Ry. & Lighting Co.*, 311 U.S. 544, 558, 61 S.Ct. 379, 383, 85 L.Ed. 336 (1941) (citations omitted)).[8]

Under these circumstances, we find that the jury miscalculated the award of damages owed to Vector. Accordingly, we reverse and remand with direction to the trial judge to enter judgment for Vector in the amount of $239,739.11.[9]

*So ordered.*

STEADMAN, Associate Judge, dissenting in part:

I agree that the jury award of damages cannot stand, but I would remand for a new trial on that issue. While the case was indeed tried on the theory that the October 19 agreement formed the basis of Vector's suit, the question still remains: exactly what, in the final analysis, was that agreement?[1]

I cannot agree with the assertion that even the language of the October 19 agreement is susceptible to only one construction. The agreement reads: "Vector has earned a real estate brokerage commission due and payable on the following terms and conditions: [$617,462.31 total commission]. Manufacturers and Cafritz will split payments of the fees equally." Which is controlling, the dollar

amount or the equality of fee payments? Further, the October agreement may have been modified or otherwise affected by the oral discount agreement which was formalized in a November letter agreement between Manufacturers and Vector after Cafritz signed the October letter, but before Manufacturers signed it.

One interpretation would lead to damages of $239,739.11; the other to damages of $188,501.55. There was ample evidence at trial of the entire course of dealing between the parties on the fee issue. "[I]f a contract is ambiguous, and the evidence supports more than one reasonable interpretation, the interpretation is a question of fact for the jury." *Morgan v. American Univ.*, 534 A.2d 323, 329 (D.C.1987) (quoting *Howard Univ. v. Best*, 484 A.2d 958, 966-67 (D.C.1984)). Accordingly, I would remand for a new trial on the issue of damages.

case. For the reasons addressed, we find that Vector was entitled to a judgment of $239,739.11 as a matter of law.

---

8. "Contract damages ... are intended to give the [injured party] the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." RESTATEMENT (SECOND) OF CONTRACTS § 347 comment (1981).

9. We do not subscribe to appellee's view that Vector is requesting an additur in the instant

1. While this certainly was not Cafritz's principal point at trial—it sought complete nullification of the agreement—I think the argument was sufficiently made to warrant the trial court's recognition that the agreement's terms were in dispute.