318

Daryl J. HUDSON III, Plaintiff,

v.

NeXUS WORLDWIDE HOLDINGS, LTD.; Interfax Communications Inc. dba NeXus Telecom; and Ron Reddy, Defendants.

No. Civ.A. 94–2403(TAF).

United States District Court, District of Columbia.

Feb. 23, 2000.

Stephen Louis Braga, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for Plaintiff.

Walter F. Zenner, Washington, DC, for Defendant.

## MEMORANDUM–OPINION

FLANNERY, District Judge.

On July 7, 1998, this case went to trial by jury, with the Honorable Harold Greene presiding. The only count before the jury was a claim against Ronn Reddy ("Reddy") alleging tortious interference with contract. The jury subsequently returned a verdict for the plaintiff, Daryl J. Hudson, III ("Hudson") in the amount of $100,000 in compensatory damages. Following the verdict, plaintiff moved to amend the damages award and Reddy moved for judgment as a matter of law.[1] Following Judge Greene's retirement, the case was reassigned to this Court, which heard oral argument on the pending motions on December 2, 1999 and reserved decision.

---

1. Judgment for the plaintiff was entered on August 10, 1998. Plaintiff's motion was filed the same day, and defendant's motion was filed on August 21, 1998. Thus, both motions are timely.

See Fed.R.Civ.P. 59(e), 50(b) (providing 10 day periods for relevant motions); see also 6(a) (excluding weekends from time computation where period is less than 11 days).

Now, for the reasons discussed, both motions are denied.

## I. Background

Hudson's claim of tortious interference with contract was based on his allegation that Reddy had intentionally induced a breach of an agreement between plaintiff and NeXus Worldwide Holdings, Ltd. ("NeXus"), a telecommunications corporation of which Reddy was the President and Chief Executive Officer ("CEO"). According to the agreement, Hudson was to use his best efforts to help Nexus obtain $20,000,000 (Canadian) in equity financing to support an expansion into the telecommunication market in the United Kingdom. In return, he would receive among other things a "finder's fee" equal to 3% of any financing NeXus received as a result of his efforts. Hudson alleged that after he had achieved an important step toward obtaining financing, his efforts were sabotaged by Reddy, with the result that NeXus received no financing and Hudson received no finder's fee.

Specifically, in July and August of 1994, Hudson arranged for NeXus to enter into a contract with an international financing firm, London Court, in which London Court agreed (as Hudson had) to attempt to locate investors willing to provide equity financing to NeXus.[2] On August 3, 1994, plaintiff forwarded the proposal to Stanley Cohen, a principle shareholder of NeXus and its chief financial officer, for approval by the NeXus Telecom Board. On August 18, the proposal was accepted by Dr. Nel, who, like Reddy, was President and CEO of NeXus.[3]

Hudson then arranged for NeXus and London Court to meet in London during the week of September 19, 1994 to discuss the arrangement. Reddy refused to attend the meeting. As a result of Reddy's refusal to attend the meeting in London, the London Court deal collapsed. Plaintiff alleged that, had Reddy not caused the contract to collapse, London Court would have found investors and plaintiff would have received an appropriate finder's fee.

Although Hudson had originally brought other claims and had also sued NeXus, the only claim submitted for trial was the tortious interference claim against Ron Reddy. At the close of plaintiff's case, Reddy moved for a directed verdict. He argued that plaintiff had failed to prove that defendant's actions caused plaintiff any damage. He asserted that even if the London Court agreement had not terminated, London Court would not have been able to find any investors before NeXus filed for bankruptcy in January of 1995 and that it would have been nearly impossible to obtain financing thereafter. Thus, he argued, defendant's actions did not cause plaintiff to lose a finder's fee because Hudson would not have received one in any case. Judge Greene denied the motion, finding that the testimony of a London Court employee that he would have worked with NeXus to help it avoid bankruptcy was sufficient, "at least as of now," to support a finding of proximate causation. Pl.Opp. To Motion For Judgment Ex. 1.at 2. He concluded, "I am somewhat reluctant to do this because I think that the defendants have a better case, but there is enough here to go to the jury." *Id.* He also stated that "[o]f course, denial of the motion is without prejudice to renewal of the motion after the defense testimony is in and to renew another motion if the jury does come back in favor of the plaintiff and a motion for judgment NOV is filed." *Id.*

Defendant then put on his case, consisting only of the testimony of Reddy. At the close of his evidence, he did not renew his motion for judgment as a matter of law and the case was sent to the jury, which returned a verdict for the plaintiff in the amount of $100,-000.

## II. Discussion

### A. Plaintiff's Motion to Amend the Judgment

 Plaintiff moves to amend the judgment of the jury, specifically the damages

---

**2.** See Complaint, Ex. B; Court's July 9, 1997 Opinion at n. 5.

**3.** Both Reddy and Nel held the title of President and CEO because they "couldn't agree on who would be president and CEO, so [they] both were both." Trial Trans. at 671.

awarded. Although the plaintiff does not specify what rule he is proceeding under, the Court construes the motion as one pursuant to Federal Rule of Civil Procedure 59(e) ("Motion to Alter or Amend Judgment"). The primary reasons justifying relief under Rule 59(e) are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Anyanwutaku v. Moore,* 151 F.3d 1053, 1057–58 (D.C.Cir. 1998) (internal quotations omitted). Where a plaintiff is seeking an increase in the damages awarded by a jury (technically referred to as an additur), plaintiff must demonstrate at the least that the damages are subject to resolution as a matter of law; otherwise, modification of the award would constitute a ruling of fact by the judge in violation of the defendant's Seventh Amendment right to jury trial. *See Hawkes v. Ayers,* 537 F.2d 836, 837 (5th Cir.1976) ("It is well-settled ... that the Seventh Amendment prohibits the utilization of an additur, at least where the amount of damages is in dispute") (citing *Dimick v. Schiedt,* 293 U.S. 474, 486–88, 55 S.Ct. 296, 79 L.Ed. 603 (1935)); *see also Abeshouse v. Ultragraphics, Inc.,* 754 F.2d 467, 473 (2d Cir.1985) ("A Rule 59(e) motion may not be granted where to do so would undermine the jury's fact-finding role") (citation and internal quotations omitted).

Plaintiff argues that the jury's damage award of $100,000 is incorrect as a matter of law, and that the proper award is $414,000. Plaintiff asserts that the undisputed measure of damages was 3% of the amount of financing obtained, that the amount of financing that Hudson agreed to assist in obtaining was $20 million (Canadian), and 3% of this amount is $414,000 U.S. dollars. This is based on a conversion rate of .69 U.S. dollars for each Canadian dollar. Plaintiff argues that because $20 million was the only amount of financing discussed at trial, a conclusion by the jury that any other amount would have been obtained is improperly speculative.

■ The Court finds no basis in the trial record to support the conclusion that the damages were fixed at $414,000 (3% of $20 million (Canadian)) as a matter of law. First, the agreement did not fix Hudson's compensation at that amount. It provided, rather, that Hudson would receive 3% of whatever amount of financing was obtained. Plaintiff's witness Stanley Cohen, an employee of NeXus, testified that under the agreement, plaintiff would receive "[t]hree percent of *any* equity financing that was brought in. In other words, *if we received $10 million or $20 million, he would get 3 percent of that.*" Def.Ex. 2 at 22 (emphasis added). Thus, under the agreement, the absolute amount of the finder's fee damages was expected to vary depending on the amount of financing plaintiff actually obtained.

Contrary to plaintiff's principle assertion, the amount that plaintiff would have actually obtained is not determinable as a matter of law. The only result of plaintiff's efforts was the London Court agreement. This agreement was not a guarantee that London Court would provide $20 million in financing or even a guarantee that it would locate other investors to provide such equity; it was only an agreement that London Court would use its "utmost reasonable endeavors" to locate other investors to provide financing. Plaintiff's damages thus depended on how much financing London Court would have actually been able to secure. London Court's degree of success in turn depended on the availability of investors, the condition of the company, the suitability of the market for expansion and other factors referred to at trial. Given these factual variables, it is impossible to conclude as a matter of law that London Court would have obtained the full $20 million in financing.

Plaintiff argues that this case is analogous to *Vector Realty Group, Inc. v. 711 14th Street,* 659 A.2d 230 (D.C.1994), in which an additur was found appropriate. That case also involved a suit to recover a commission but there, the amount of the commission was fixed in the agreement and thus determinable as a matter of law. *Id.* at 233–34. Here, by contrast, the final amount of compensation was not fixed in plaintiff's agreement. Thus, the Court cannot simply look to the terms of the agreement to resolve the correct amount of damages. Because the amount of damages cannot be resolved as a

matter of law in plaintiff's favor, any increase by the Court would be improper.

Plaintiff argues that the jury's award was improperly speculative because there was no evidence to suggest that London Court would have obtained any specific amount of money less than $20,000,000 (Canadian). Accepting plaintiff's conversion rate and given that the damages were equal to 3% of the financing that would have obtained, the jury's award of $100,000 was equivalent to a finding that London Court would have obtained only $4,830,917.87 (Canadian) in financing.

It is true that there does not appear to be a specific reference in the trial record which would point the jury to this particular figure. However, plaintiff fails to show how a finding that London Court would have obtained the full $20,000,000 would be any less speculative. Plaintiff put on evidence that $20 million was the goal, but did not present evidence that London Court would actually have been able to obtain that amount, or indeed that it would have actually obtained any specific amount of financing. Assuming that the jury's award was speculative, an amendment to the award would be likewise, and thus doubly inappropriate. Plaintiff's motion to amend the damages is therefore denied.

### B. Motion for Judgment as a Matter of Law

Defendant moves pursuant to Fed.R.Civ.P. 50(b) for judgment as a matter of law. He argues that plaintiff failed as a matter of law to prove that defendant's conduct caused plaintiff any damage because plaintiff's own evidence showed that London Court would not in any case have been able to find investors. Reddy asserts that the only testimony regarding whether London Court would have been able to find investors came from Ian Parker ("Parker"), an employee of London Court testifying for Hudson. Parker testified, *inter alia*, that given the state of the telecommunications marketplace, he was confident that he would be able to locate inves-

tors, and that he had located two potential investors already. Reddy argues, however, that (1) Parker's own testimony established that NeXus would have filed for bankruptcy before London Court would have obtained any financing, and that after NeXus went bankrupt, investment was highly unlikely; (2) Parker's testimony established that investors were unlikely to agree to provide any capital without seeing audited financial statements from NeXus, and that NeXus was never able to produce such statements; and (3) even if Parker's testimony supports a finding that London Court would have obtained investors, the testimony is legally inadmissible.

■ Although defendant's arguments may have merit, the Court is constrained to deny the motion because defendant failed to move for judgment at the close of all the evidence. "[A] prerequisite to any motion for judgment n. o. v. [under Rule 50(b) ] is a motion for directed verdict at the close of all the evidence [pursuant to Rule 50(a)(2) ]." *U.S. Industries, Inc. v. Blake Construction Co., Inc.*, 671 F.2d 539, 548 (D.C.Cir.1982); *see also* Fed.R.Civ.P. 50, Advisory Committee Notes ("A motion for judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made at the close of all the evidence.").[4] It is undisputed that, although defendant moved for judgment at the close of plaintiff's case, he did not make the requisite motion at the close of all the evidence.

The circuits are divided on how strictly to enforce Rule 50(b) where a defendant has moved for judgment at the close of plaintiff's case but not at the close of all the evidence. The D.C. Circuit has not addressed the question. Some circuits have required strict compliance and hold that a motion at the close of plaintiff's case is never sufficient to support a Rule 50(b) motion. *See Mid–America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1364 (7th Cir.1996); *Redd v. City*

---

4. The terms "directed verdict" and "j.n.o.v.," are no longer used in federal court to refer to such motions. The 1991 amendments to the Federal Rules of Civil Procedure merged the traditional terms "directed verdict" and "j.n.o.v." into a single term: "judgment as a matter of law."

Thus, a motion for directed verdict is now a motion for judgment as a matter of law under Fed.R.Civ.P. Rule 50(a) and a motion for j.n.o.v. under Fed.R.Civ.P. Rule 50(b) is considered a renewal of the first motion.

*of Phenix City, Ala.*, 934 F.2d 1211, 1214–15 (11th Cir.1991). On the other hand, many circuits have fashioned narrow exceptions, considering a motion at the close of plaintiff's case to be sufficient where certain other conditions are satisfied. Defendant interprets these cases as holding that a motion at the close of plaintiff's case is sufficient where plaintiff suffered no prejudice from the failure to renew at the close of all the evidence and urges this Court to follow that rule here. However, after reviewing the case law, this Court finds that the exceptions created by other courts are not as broad as defendant suggests and that none of the established exceptions apply here.

■ It is true that many courts have noted that the principle purpose of requiring defendant to move for judgment prior to the verdict is to provide the plaintiff with a fair opportunity to cure any insufficiencies. *See, e.g., Purcell v. Seguin State Bank and Trust Co.*, 999 F.2d 950, 956 (5th Cir.1993). Notwithstanding this purpose, no circuit has held that the failure to move at the close of evidence is excused merely by a showing that the non-movant would not be prejudiced. Rather, they have in addition uniformly required some action from the trial court itself on which the defendant properly relied in failing to renew its motion before the verdict. For example, the Fifth Circuit excuses noncompliance where *"the trial court reserves its ruling on the defendant's motion* for a directed verdict and the only evidence introduced after the motion is not related to the motion…."* Purcell v. Seguin State Bank and Trust Co.*, 999 F.2d 950, 956 (5th Cir. 1993) (emphasis added). The Fifth Circuit's exception is clearly inapplicable here. Judge Greene did not reserve on defendant's motion. Rather, the Judge ruled: "I have come to the conclusion that I will deny the motion." Pl.Opp. To Motion For Judgement Ex. 1 at 2.

Other courts have held that a motion at the close of plaintiff's case is sufficient where "the court somehow indicated that the movant need not renew its motion in order to preserve its right to challenge the verdict" and the earlier Rule 50(a) motion "closely preceded the close of all of the evi-

dence." *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 655 (8th Cir.1995); *Singer v. Dungan*, 45 F.3d 823 (4th Cir.1995) (same standard); *Keisling v. SER–Jobs For Progress, Inc.*, 19 F.3d 755, 759 (1st Cir.1994) (creating "very narrow exception" where there is "judicial assurance concerning preservation of rights at the time of the motion and … brief and inconsequential evidence following the motion."); *Ebker v. Tan Jay Intern., Ltd.*, 739 F.2d 812, 823 (2d Cir.1984) (applying exception where the court "indicated that the renewal of the motion would not be necessary to preserve the party's rights; and … [t]he evidence following the party's unrenewed motion for a directed verdict was brief and inconsequential.") (citation omitted). The broadest application of this test appears to come from the Fourth Circuit. The court in *Singer* noted that non-compliance is excused where the judge has indicated that renewal of the motion was unnecessary, and found that exception applicable where a judge denied a motion at the close of plaintiff's case and stated that " 'there's enough evidence to go.' " *Id.* at 828.

The Court finds that Judge Greene's ruling could not have reasonably been viewed as indicating that renewal would not be necessary, even under the Fourth Circuit's expansive interpretation. Although, in denying defendant's motion, Judge Greene did indicate that he felt there was "enough to go to the jury," he also stated that a material question was only shown "for now," Pl.Opp. To Motion For Judgment Ex. 1 at 2. This limiting language is only meaningful if it were intended to suggest that the evidence might not be enough to go to the jury after the close of defendant's case. More importantly, Judge Greene followed his ruling by stating that "denial of the motion is without prejudice to renewal of the motion *after the defense testimony is in* and *to renew another motion* if the jury does come back in favor of the plaintiff and a motion for judgment NOV is filed." *Id.* Far from indicating that renewal was unnecessary, Judge Greene affirmatively stated that defendant's options were in accordance with the standard requirements of Rule 50(b).

Under these circumstances, the only means by which this Court could arguably allow defendant's motion is under a standard of pure non-prejudice. However, as noted, no circuit applies so broad an exception. Given the number of circuits that have ruled on the question, their uniform refusal to adopt a simple test of non-prejudice is persuasive authority. Accordingly, defendant's motion is barred by his failure to move at the close of evidence.[5]

### III. Conclusion

For the reasons discussed, plaintiff's motion to amend the judgment is denied, and defendant's motion for judgment as a matter of law is denied. An appropriate order will accompany this decision.

---

**5.** There are additional problems present with regard to some of the arguments that defendant raises before the Court. At the close of plaintiff's case, defendant raised his argument that proximate causation was not proven because of the bankruptcy filing. However, defendant did not raise his argument that NeXus could not have produced audited financial statements without which investors would be unlikely to provide any financing, nor did he raise his assertion that Parker's testimony was inadmissible. It is established that to preserve a claim for a Rule 50(b) motion, the "precise claim made in the motion for judgment n.o.v. must have been made in the motion for directed verdict." *Whelan v. Abell,* 48 F.3d 1247, 1251 (D.C.Cir.1995) (internal quotations and citation omitted). Because defendant did not raise two of his precise claims, they would be barred even if the motion at the close of plaintiff's case were sufficient to preserve defendant's rights.

In addition, the Court notes that while the testimony of the defendant during defendant's case is arguably irrelevant to whether Parker would have obtained investors prior to NeXus' bankruptcy, there was significant repeated testimony directly relevant to whether NeXus could produce financial statements. *See* Trial Trans. at 685–86, 699, 706–07. No circuit excuses a failure to move for judgment after defendant's evidence where that evidence is relevant to the motion. *See, e.g., Ebker,* 739 F.2d at 823 (defendant's evidence must be "inconsequential"). Thus, defendant's argument in connection with NeXus' ability to produce audited financial statements is indisputably barred.