Lawrence BERNARD, Appellant,

v.

Robert CALKINS, Appellee.

No. 92–CV–947.

District of Columbia Court of Appeals.

Argued April 27, 1993.
Decided May 17, 1993.

Christine Mougin–Boal, with whom Gary A. Godard, Fairfax, VA, was on the brief, for appellant.

Harold E. Jordan, with whom Rachel C. Evans and Marina Lyn Beckhard, Washington, DC, were on the brief, for appellee.

Before TERRY, WAGNER, and SULLIVAN, Associate Judges.

WAGNER, Associate Judge:

Appellant, Lawrence Bernard, sued appellee, Robert Calkins, for damages resulting from injuries sustained when appellant was struck by an automobile being operated by appellee. The jury found for appellant and awarded him damages in the amount of $11,756.93, a sum less than the medical expenses stipulated to by the parties. The record discloses that the jury did not include an award for pain and suffering or for lost wages, although the parties stipulated that lost wages amounted to $4434. Appellant argues that the trial court abused its discretion in denying his motion for a new trial based on the inadequacy of the verdict. Appellant also contends that the trial court erred in denying his request for a curative instruction to

explain the consequences of a workers' compensation lien against any recovery after appellant inadvertently disclosed that he had received workers' compensation benefits.[1] We conclude that the verdict evidences partiality, mistake, or consideration of an improper element and reverse for a new trial on damages only.

### I.

On January 27, 1989, appellant was kneeling while performing electrical work in a driveway at 5415 Connecticut Avenue, N.W. in the District of Columbia when he was struck by a vehicle which appellee was driving. Appellant, who was yelling for the driver to stop the car, was dragged under the vehicle and down the driveway for some distance before appellee brought the vehicle to a halt. According to appellant, appellee again started the car, at which time the front tire of the vehicle ran over appellant's right ankle as he tried to get out of the way. Appellant's resulting injury was diagnosed as a fractured dislocation of the ankle and ligament damage. During surgery the next day at George Washington University Hospital, appellant's doctor inserted a metal plate and screws into his ankle. Appellant spent five days in the hospital, and he wore a cast for three weeks and a brace for at least two or three months. Appellant testified that he also suffered a deep scrape of the right knee in which asphalt became embedded during the accident. According to appellant, it was only after months of soaking and bandaging the knee to remove the asphalt particles that his knee finally healed.

At the recommendation of his doctor and a second orthopedic surgeon, appellant underwent a procedure in 1992 to remove the plate and screws from his ankle. Unrelated to this procedure, two days later, appellant suffered a heart attack for which his doctors administered a thrombolitic agent, which breaks up blood clots. The medication prolonged the healing process for appellant's ankle because clotting is important to that process.

While the parties' respective medical experts disagreed as to the extent of the permanent injuries, both experts testified that appellant suffered some partial impairment as a result of the injury to his ankle. Dr. Mark Madden, appellant's treating physician for the second surgery, testified that appellant suffered a permanent twenty-one percent impairment to the ankle as a result of the accident, and a six percent overall impairment. Dr. Madden also testified that it was likely that appellant would develop arthritis in the ankle and that he would experience chronic stiffness, soreness and aching over the next many years. He further testified that appellant walked with a slight limp and that he had a limitation of motion of the ankle, although he had seen no indication in the medical records that appellant complained about pain. Appellee's expert, Dr. Richard Conant, rated appellant's overall functional impairment at about four percent and his ankle with a ten percent impairment.[2] Dr. Conant, who examined appellant in May 1992, described swelling around appellant's ankle and some irregularities in the joint.

Although appellant downplayed his pain during testimony, he provided some evidence that his ankle still caused him pain, or aches, as he chose to describe it. Appellant testified about physical limitations he experienced while performing his new job, including an inability to stand on a ladder for any period of time. He said that his ankle ached after his second or third trip walking around the grounds of his job site or during weather changes in winter. At the time of trial in June 1992, appellant testified he could play golf, although he said he could not walk the whole course and rode around it most of the time. He also said he played better with his brace on than off.

---

1. In view of our disposition of appellant's first argument, we need not resolve appellant's claim of instructional error.

2. Dr. Conant explained that impairment of function is determined by looking at a particular part of the body and determining how it works, while disability involves the way in which an injury affects a particular individual.

Appellant never returned to Kolb Electric where he was employed at the time of the accident. Six weeks thereafter, he took another job as the physical plant director of a college at an increase in salary. During questioning by his own attorney concerning his loss of earnings, appellant said that he did not work for about six or seven weeks after the accident. He testified that his initial loss of earnings was approximately $3500; however, he inadvertently volunteered that this was because the workers' compensation carrier paid sixty percent of his wages during the period of his disability.[3] During cross-examination, appellee's counsel pursued this line of inquiry, questioning whether the compensation carrier paid sixty percent of $3500 or whether that represented the total loss. Appellant objected and started to make an instructional request, but there was an interruption. Then, in an apparent effort to cure the problem, the trial court suggested that the parties stipulate to the amount of lost wages.[4] The trial court instructed the jury that such a stipulation would be made, deferring the exact stipulation of the total amount involved until later. Subsequently, appellant's counsel presented the parties' stipulation to the jury, specifying that appellant's total lost wages were $4434 and that the total medical expenses were $13,623.33. The trial court then instructed the jury that a stipulation is an agreed statement of facts between the parties which the jury can consider as undisputed evidence. The court also instructed the jury, without objection, that "if you return damages this much is not in dispute, which is to say if you find liability those amounts are not disputed."

On a special verdict form, the jury recorded its finding that appellee was negligent and that his negligence "caused injury to [appellant]."[5] The damages portion of the verdict form as completed by the jury's foreperson appears as follows:

a) medical expenses, pain and suffering: 100%–11,756.93

b) loss [sic] earnings: 0

When the verdict was returned in open court, the foreperson stated "[t]he equitable settlement that we came up with at 100 percent medical expenses is $11,756.93." In response to a question from the court, the foreperson stated that they awarded nothing more, "[n]o loss [sic] wages." An individual poll confirmed the verdict as read, and the court discharged the jury.

Appellant filed a timely motion to set aside the verdict and for a new trial pursuant to Super.Ct.Civ.R. 59, to which appellee filed an opposition.[6] After a hearing, the trial court denied the motion, concluding that it had no legal basis to set aside the verdict.

## II.

■ Appellant contends that the trial court erred in denying the motion for a new trial where the verdict obviously failed to compensate him for pain and suffering or for the stipulated amount of the medical bills and lost earnings. We review the trial court's denial of such motions for an abuse of discretion. *Jefferson v. Ourisman Chevrolet Co.*, 615 A.2d 582, 585 (D.C. 1992); *Barron v. District of Columbia*, 494 A.2d 663, 665 (D.C.1985). When the trial court refuses to disturb a jury's finding of damages, "an appellate court will order a new trial only when the award is so inadequate as to indicate prejudice, passion or partiality on the part of the jury, or where it must have been based on over-

---

3. Appellant's counsel informed the court at the bench that he had instructed his client not to mention workers' compensation, but that appellant apparently forgot.

4. During a bench conference, appellant's counsel represented that the workers' compensation carrier had a lien on any recovery.

5. The verdict form also reflects that the jury found no contributory negligence on appellant's part.

6. Super.Ct.Civ.R. 59 provides in pertinent part as follows:

 (a) *Grounds.* A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States or of the District of Columbia;
 . . .

sight, mistake or consideration of an improper element." *Hughes v. Pender*, 391 A.2d 259, 263 (D.C.1978); *accord Jefferson*, 615 A.2d at 585; *Barron*, 494 A.2d at 665. Using that standard, the circumstances are necessarily rare when the trial court's decision upholding the jury verdict will be reversed.

In *Barron*, upon which appellant relies, this court ordered a new trial on the damages question where the jury verdict exceeded the undisputed special damages by only $38.60. 494 A.2d at 664–65. There was in *Barron* uncontradicted and unimpeached evidence that the plaintiff had sustained substantial injuries and facial scarring, and there was no meaningful contest as to liability. *Id.* at 665. Therefore, we found no principled basis upon which to affirm the decision and noted that the trial court had articulated none. *Id.* In so doing, we applied the reasoning used by the Tenth Circuit in *Brown v. Richard H. Wacholz, Inc.*, 467 F.2d 18, 21 (10th Cir.1972) when it ordered a new trial on damages where the jury verdict reflected the exact amount of the medical expenditures without any allowance for other damage elements. The passage from *Brown* which reflects our reasoning in *Barron*, and which is pertinent to our review here, is the following:

> In the present case the verdict reflects the exact amount of medical and hospital outlay. Thus, on its face it establishes that the jury failed and refused to award compensation for pain and suffering and permanent disability. Where, as here, the plaintiff suffered a severe injury in which the damages were substantial, the conclusion must be that the jury disregarded its fact-finding function. It is clear from the authorities that the jury has no such dispensing power. Where this is apparent the failure of the trial judge to grant a new trial constitutes a manifest abuse of discretion.

*Brown*, 467 F.2d at 21.

■ Appellee seeks to distinguish *Barron* upon the ground that this case, unlike

*Barron*, involved real questions of liability and damages. We are not persuaded by these points given the facts of this case. Although liability was a disputed issue at trial, the jury specifically resolved that issue in favor of appellant as reflected by the responses recorded on the verdict form. Having done so, the jury was required to award damages in a sum which would fairly and reasonably compensate appellant for all the damages he suffered which were proximately caused by appellee's negligence. *Boiseau v. Morrissette*, 78 A.2d 777, 780 (D.C.1951); *see also District of Columbia v. Barriteau*, 399 A.2d 563, 566 (D.C.1979). There was no dispute that appellant's fractured ankle resulted proximately from the accident nor that the medical treatment was related to the fracture. In this regard, this case is significantly distinguishable from our recent decision in *Jefferson, supra*, a case upon which appellee relies for his position. In *Jefferson*, the parties stipulated to the defendant's liability for the accident, the fact of the injured plaintiff's medical treatment, and the reasonableness of the medical bills incurred. 615 A.2d at 583. However, in *Jefferson*, the vigorously contested issue which remained after the parties' stipulation was whether the medical treatment received by the plaintiff was for injuries proximately caused by the defendants. *Id.* The jury awarded no damages to appellants (the alleged injured party and his spouse), and this court found no abuse of discretion in the trial court's denial of the motion for a new trial. *Id.* at 586. It was apparent in *Jefferson* that the jury discredited plaintiffs and their witnesses with respect to whether any injuries proximately resulted from the defendant's negligence. For this reason, we found no basis in the record to conclude that the verdict resulted from some improper consideration. *Id.* at 585–86.[7] The parties' stipulations and other record evidence discloses that the present

---

**7.** In *Jefferson*, we distinguished *Barron* "because, unlike *Barron*, where the evidence of damages was uncontroverted, the litigation strategy of the appellee in the present case was

to attack, contest, and contradict appellants' evidence of causation and alleged damages." 615 A.2d at 586 n. 5.

case is in an entirely different posture. Here, there was no similar contest as to the proximate cause of appellant's injuries.

Other cases which appellee cites in support of his position are also distinguishable for similar reasons. In *Mantis v. Ashley*, 391 A.2d 267, 269 (D.C.1978), this court upheld a jury's verdict awarding the plaintiff medical expenses and lost wages, but denying recovery for pain and suffering and loss of consortium. In *Mantis*, we found no impermissible inconsistency in the verdict because medical testimony presented by both sides indicated that Mrs. Mantis' injuries were such that objective evidence of pain could not be conclusively documented. 391 A.2d at 268–69. Therefore, based on the record, we concluded that the jury's verdict should not be overturned. In *Cunningham v. Conner*, 309 A.2d 500 (D.C. 1973), we again found no reason to intrude where the jury awarded as damages the exact amount of the medical bills, $179. Most important to our decision in *Cunningham* was the absence of any inconsistency between the verdict, which denied recovery for pain and suffering, and the record. The case of *Gritz v. Hot Shoppes, Inc.*, 117 A.2d 126 (D.C.1955), also cited by appellee, is premised on a similar rationale. In *Gritz*, the court found no abuse of discretion in the trial court's refusal to set aside an award of $1 in damages as inadequate. *Id.* at 127–28. The court pointed out, however, that the issues of the injury and extent of injury were strongly contested, and based on that evidence, the jury apparently found that plaintiffs had suffered no substantial injury. *Id.* at 128. Finally, appellee cites a case in which a jury award of $0.01 was affirmed, *Chambers v. District of Columbia*, 44 App.D.C. 331 (1916). However, in *Chambers* the court's decision was based on the fact that the evidence was sufficient to justify the conclusion reached that plaintiff had sustained no substantial injury. *Id.*

In contrast, in this case, it was undisputed that appellant sustained a fracture to his ankle as a result of this accident which required his initial hospitalization and surgery, a cast, a brace and a period of recuperation. It was also undisputed that appellant lost time from work, and the parties stipulated to the amount of his lost earnings. Medical experts for both parties agreed that appellant suffered a permanent overall bodily impairment as a result of the accident, although the parties differed as to the percentages involved. The objective evidence of some pain is apparent from the injury and surgery as described in the record. Even though appellant seems to have tried to avoid overstating the inconveniences and pain he suffered following the accident, there is undisputed evidence in the record disclosing it. Thus, in this case there is an impermissible inconsistency between the evidence and the verdict which reveals that some mistake or improper element affected the result.

Moreover, it is apparent from the verdict form and the verdict returned in open court that the jury omitted elements of damages which the undisputed evidence, including the parties' stipulation, demonstrated. Particularly, the jury's failure to award any lost wages may have resulted from an assumption about the effect of the receipt of workers' compensation on the verdict. *See Geffen v. Winer*, 100 U.S.App.D.C. 286, 287, 244 F.2d 375, 376 (1957) (value of time lost from employment appropriate element of damages even if plaintiff continues to receive salary); *Sherrillo v. Stone & Webster Engineering Corp.*, 110 Cal.App.2d 785, 244 P.2d 70 (1952). However, we need not resolve whether an instruction should have been given to explain to the jury that it was improper to consider workers' compensation benefits in its determination of damages.[8] It is sufficiently clear that the jury's omission of any compensation for lost earnings and pain and suffering on this record is not only suspect, but results

---

**8.** At the close of the evidence, appellant requested that the court instruct the jury that any recovery is subject to a lien for the workers' compensation payments, and therefore, such payments should not be considered in arriving at the verdict. The trial court denied the request, concluding that it should wait to see if the jury had a question about the matter. However, the jury never inquired about it.

from a mistake or consideration of some improper element, thereby warranting a new trial on damages. *See Barron, supra,* 494 A.2d at 665.[9]

 Appellant requests that a new trial be granted on the question of damages only. Appellee argues for a new trial on all issues only if the court determines that the exclusion of the jury's instruction on workers' compensation constitutes the basis for retrial. Since our ruling rests on the principles articulated in *Barron, supra,* rather than the instructional omission claimed by appellant, we need not consider appellee's conditional argument for a complete retrial. We are persuaded that the liability and damages issues are so distinct that a new trial may be limited properly to damages only. *See Barron,* 494 A.2d at 665. Therefore, we reverse and remand for a new trial on damages only.

*So ordered.*

---

9. We reject appellee's claim that the result in this case should be different because appellant did not object to the verdict after it was read, but before the jury was discharged. Appellant took the required action to preserve the inadequate jury damages award issue by filing a motion for a new trial on that ground. *See Keener v. Karr,* 528 A.2d 1236, 1237 (D.C.1987) (dismissing appeal for lack of jurisdiction where appellant failed to file a new trial motion on grounds of inadequate jury award of damages).