Laurie E. POSNER, Appellant,

v.

Kevin A. HOLMES, Appellee.

No. 97–CV–110.

District of Columbia Court of Appeals.

Submitted Jan. 28, 1999.
Decided Oct. 28, 1999.

the trial court found that C.L.D. had "resisted, opposed, and impeded a police officer."

Altomease R. Kennedy, Washington, DC, was on the brief for appellant.

David F. Grimaldi was on the brief for appellee.

Before TERRY, FARRELL, and RUIZ, Associate Judges.

TERRY, Associate Judge.

Appellant Posner brought this negligence action against appellee Holmes for damages resulting from injuries she allegedly suffered when the two of them were involved in an automobile accident. A jury, having found that Holmes was negligent and that the injuries suffered by Posner were the result of his negligence, awarded Posner $80,000 in damages. Posner filed a motion for new trial, asserting that the amount of the verdict was inadequate, but the trial court denied the motion. On appeal Ms. Posner contends that the denial of her motion was an abuse of discretion. She argues that because the jury found that Holmes' negligence proximately caused the accident, it was required to compensate her for all of her injuries. Since the amount of the verdict was not even sufficient to cover her medical expenses and lost wages, she concludes that the verdict could not have included any amount for her pain and suffering, and that she should therefore have a new trial. We hold that, because there was a factual dispute as to the extent of the injuries actually attributable to the accident, the amount of the verdict was not legally inadequate, and that the trial court therefore did not abuse its discretion when it denied Ms. Posner's motion. Accordingly, we affirm.

# I

Appellant Posner is a paramedic. On the evening of July 10, 1994, she was driving an ambulance on an emergency run, with flashing lights and blaring siren. Despite the lights and siren, appellee Holmes failed to yield the right of way at an intersection, and his car collided with the ambulance.

Following the accident, Ms. Posner sought medical treatment for pain in her neck, arms, and back. A magnetic resonance imaging (MRI) examination, performed on August 5, revealed that she had two herniated disks at C4–5 and C6–7 in her neck. Her treating physician, Dr. Neil Kahanovitz, determined from a physical examination and from the MRI that her symptoms were consistent with a herniated C6–7 disk; he concluded, however, that the herniated C4–5 disk was asymptomatic. On September 13 Dr. Kahanovitz operated on Ms. Posner's neck. He removed the damaged disk at C6–7 and replaced it with a piece of bone taken from her hip, thereby fusing that section of the spine. Although the surgery was successful, the site on the hip from which the bone had been removed became infected, requiring Ms.. Posner to take antibiotics and have the wound periodically drained for several months thereafter.

Following the surgery, Ms. Posner wore a hard neck collar for six weeks and then a soft collar for six more weeks. According to Dr. Kahanovitz, Ms. Posner was free of symptoms in January 1995 and was ready to return to work as a paramedic, which she did on February 9, 1995.[1] However, because her certification as a paramedic had lapsed during her time away from work, she could not immediately return to her full duties. On her first day back on the job, therefore, Ms. Posner did nothing but paperwork. On the second day, she helped her supervisor move some office chairs up three flights of stairs. That night she experienced pain and spasms in her neck. On February 13 she returned to

---

1. Ms. Posner disagreed with Dr. Kahanovitz's recollection of her condition following the surgery. She claimed that she was still in pain in January and that she communicated that fact to Dr. Kahanovitz, stating that she was concerned about returning to her job as a paramedic.

Dr. Kahanovitz, who conducted additional tests and gave her some more medication. She did not then go back to work.

In October 1995 Ms. Posner consulted Dr. Bruce Ammerman, who determined, after some additional tests, that Ms. Posner was experiencing problems associated with a herniated disk at C4–5. Accordingly, Dr. Ammerman operated on the C4–5 disk in November 1995. The operation was very similar to the previous one, except that the site on her hip from which the piece of bone was removed did not become infected. After the second surgery, Ms. Posner again had to wear a collar—this time for fourteen weeks—and to receive physical therapy. Finally, Ms. Posner was physically able to return to work on June 3, 1996. Because her certification had lapsed, however, she had to go back to the training academy to get recertified. On July 20 she returned to work in her full capacity as a paramedic.

Ms. Posner has scars on her neck and hips as a result of the two surgeries. According to her testimony, she continues to have pain in her arms and neck. Although she can perform her duties as a paramedic, she cannot lift as much as she could before she was injured. Her medical expenses, including all the tests and the two surgeries, totaled $44,095.53. Her lost wages from July 10, 1994, to February 9, 1995, and from February 11, 1995, to June 3, 1996, added up to $63,833.01. Her total financial losses (the sum of these two figures) amounted to $107,928.54.

At trial Mr. Holmes stipulated that Ms. Posner's injury to her C6–7 disk was the result of the accident. However, he denied that his negligence was the cause of the accident and also raised issues of contributory negligence and ambulance brake failure. In addition, Holmes disputed the assertion that the accident was the proximate cause of the injury to the disk at C4–5. His medical expert, Dr. Herbert Joseph, relying on Dr. Kahanovitz's records,[2] testified that before February 1995, when she carried the chairs up three flights of stairs, Ms. Posner did not have any symptoms related to the C4–5 disk. In his opinion, Ms. Posner's lifting and carrying the chairs up those stairs was the proximate cause of the problems she had with the C4–5 disk, necessitating the second surgery.[3]

With the aid of a special verdict form, the jury found that Mr. Holmes was negligent and that his negligence "was the proximate cause of the injuries and damages sustained by the plaintiff Laurie Posner." It awarded Ms. Posner $80,000 in damages. The verdict form, however, was not specific enough to permit the jury to indicate whether Mr. Holmes' negligence was the proximate cause of all the injuries and damages sustained by Ms. Posner or just the injury to the C6–7 disk and the medical expenses, lost wages, pain and suffering attributable to that injury alone.

After the return of the verdict, Ms. Posner filed a motion for a new trial on the issue of damages. She claimed that the amount of the verdict was insufficient because it did not cover all of her medical expenses and lost wages and did not compensate her at all for her pain and suffering. The trial court denied the motion, and Ms. Posner noted this appeal.

## II

This court reviews the denial of a motion for new trial for abuse of discretion. *Jefferson v. Ourisman Chevrolet Co.,*

---

2. Specifically, Dr. Joseph relied on Dr. Kahanovitz's records from a session with Ms. Posner in January 1995. Those records make no mention of Ms. Posner's suffering any pain related to her neck. Moreover, Dr. Joseph thought it was significant that Dr. Kahanovitz released Ms. Posner to work as a paramedic, which Joseph regarded as a strenuous job.

3. In this respect Dr. Joseph disagreed with Dr. Ammerman, who testified that he believed the second operation, which he performed on November 17, 1995, was necessitated by the accident on July 10, 1994.

615 A.2d 582, 585 (D.C.1992); *Oxendine v. Merrell Dow Pharmaceuticals, Inc.*, 506 A.2d 1100, 1110 (D.C.1986); *Barron v. District of Columbia*, 494 A.2d 663, 665 (D.C. 1985). When the motion is based on a claim that the verdict was inadequate to compensate the plaintiff for her injuries, the test is as follows:

> [I]n reviewing the denial of a motion for a new trial based on a claimed inadequate verdict, this court will reverse only when the amount of the award evidences prejudice, passion or partiality on the part of the jury or where the verdict appears to be an oversight, mistake, or consideration of an improper element.

*Romer v. District of Columbia*, 449 A.2d 1097, 1099 (D.C.1982) (citation omitted); *accord, e.g., Doe v. Georgetown Center (II), Inc.*, 708 A.2d 255, 256 (D.C.1998); *Bernard v. Calkins*, 624 A.2d 1217, 1219–1220 (D.C.1993). When such a motion has been denied by the same trial judge who heard all the evidence, as in this case, "an appellate court should be certain indeed that the award is contrary to all reason before it orders … a new trial." *Taylor v. Washington Terminal Co.*, 133 U.S.App. D.C. 110, 113, 409 F.2d 145, 148, *cert. denied*, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969); *accord, e.g., Prins–Stairs v. Anden Group*, 655 A.2d 842, 843 (D.C.1995); *Barron*, 494 A.2d at 665. "Under this standard, 'the circumstances are necessarily rare when the trial court's decision upholding the jury verdict will be reversed."' *Shomaker v. George Washington University*, 669 A.2d 1291, 1294–1295 (D.C.1995) (quoting *Bernard*, 624 A.2d at 1220).

■ Ms. Posner maintains that the jury's award of $80,000 in damages was inadequate because it failed to compensate her fully for all of her out-of-pocket expenses related to the injuries she suffered. She points out that her medical expenses and lost wages added up to more than $107,000 and that the award therefore could not have included any compensation for her pain and suffering and permanent injuries, *i.e.*, her scars and diminished strength. She relies primarily on *Barron v. District of Columbia*, in which this court reversed a jury verdict that exceeded the undisputed special damages by only $38.60. We conclude that her reliance is misplaced.

The plaintiff in *Barron* was injured when she fell off her bicycle after riding into a torn-up section of an alley. Her cheek was permanently scarred by the fall, and she suffered other injuries as well. At trial she testified at length about her injuries and the pain that resulted from them. As a result of the accident, the plaintiff incurred special damages—medical expenses and lost wages—totaling $2,561.40. We characterized the jury verdict of $2,600.00 as "suspect" because it provided for only a nominal recovery above the undisputed special damages, despite the plaintiff's obvious pain and suffering and permanent scarring. 494 A.2d at 665. We found persuasive guidance in a case from the Tenth Circuit:

> [T]he verdict reflects the exact amount of medical and hospital outlay. Thus, on its face it establishes that the jury failed and refused to award compensation for pain and suffering and permanent disability. Where, as here, the plaintiff suffered a severe injury in which the damages were substantial, the conclusion must be that the jury disregarded its fact-finding function.

*Brown v. Richard H. Wacholz, Inc.*, 467 F.2d 18, 21 (10th Cir.1972), quoted in *Barron*, 494 A.2d at 665. We therefore reversed the judgment and remanded the case for a new trial on damages only.

Similarly, in *Bernard v. Calkins*, this court reversed the denial of a motion for a new trial on damages when the amount of the verdict was less than the sum of the medical expenses that had been stipulated by the parties. The jury had found in favor of the plaintiff, concluding that the defendant was negligent and hence liable for the plaintiff's injuries. "Having done so," we said, "the jury was required to

award damages in a sum which would fairly and reasonably compensate appellant for all the damages he suffered which were proximately caused by appellee's negligence." 624 A.2d at 1220. Undisputed evidence at trial established that the plaintiff had lost time from work, and the parties stipulated to his lost earnings. They also agreed that there was some permanent injury, although they disagreed on its extent. Moreover, the pain that resulted from the injury and the ensuing surgery was evident from the plaintiff's testimony. The verdict, which did not even reimburse the plaintiff for all of his medical expenses (it was almost $2,000 short), obviously did not compensate him for any of these additional damages. Thus, as in *Barron*, this court reversed the judgment and remanded the case for a new trial on damages.

In both *Barron* and *Bernard*, however, "it was undisputed that the plaintiff's medical treatment and pain and suffering were directly caused by the negligence of the defendant." *Shomaker*, 669 A.2d at 1295 (citation omitted). As we explained in *Shomaker*, those cases are distinguishable from cases, such as the one before us, in which proximate cause is disputed. *See id.* at 1295–1296. The plaintiff in *Shomaker* was diagnosed in 1990 with a rare type of cancer. He sued the defendant hospital, claiming that its physicians were negligent in failing to detect the tumor three years earlier when he had consulted them about a pain in his leg. The jury found that the doctors' conduct was the proximate cause of Mr. Shomaker's injuries and awarded him $350,000 for medical expenses and $737,500 for lost income, but nothing specifically for pain and suffering.

On appeal, Mrs. Shomaker, by then widowed and proceeding as the personal representative of her late husband's estate, contended that the record clearly established pain and suffering and compelled a more generous award of economic damages. She argued that "once the jury found [the hospital] negligent, there was no question of liability," *id.* at 1295, and that the jury verdict should have compensated her husband for all of his economic damages as well as his pain and suffering. We held, however, that even though the jury had found the hospital physicians negligent, the question of whether their conduct was the proximate cause of Mr. Shomaker's medical treatment and his resulting pain and suffering was vigorously disputed. The hospital "offered evidence tending to show that Mr. Shomaker would have had similar symptoms and undergone similar treatment regardless of whether the mass had been removed in 1987," rather than 1990. *Id.* at 1294. Reviewing the expert testimony presented by both sides, which indicated that the cancer could have metastasized as much as three years after the doctors at the hospital had last seen Mr. Shomaker and that his particular type of cancer had a twenty to forty percent chance of recurrence and a high fatality rate, we concluded that the jury "could reasonably have found that Mr. Shomaker's pain and suffering were inevitable, and therefore not proximately caused by [the hospital's] conduct." *Id.* at 1295–1296.

In *Prins–Stairs v. Anden Group*, the issue of proximate causation was also "strongly disputed." 655 A.2d at 843. Despite the jury's finding that the defendant was negligent when he caused his car to collide with the plaintiff's car, there was evidence from which "the jury could reasonably find that appellant suffered no 'substantial injuries' from the ... accident distinct from the chronic neck and back pain she had experienced beforehand." *Id.* at 843–844. We therefore upheld the jury's award of no damages, distinguishing that case on its facts from *Barron* ("an exceptional case") and *Bernard* ("one of the 'necessarily rare' cases"). *Id.* at 843, 844 n. 4.

Likewise, in the present case, Mr. Holmes disputed whether the accident was the proximate cause of the injury to Ms. Posner's C4–5 disk. Early in the trial he stipulated that the injury to the C6–7 disk

was the result of the collision, and he did not contest the amount of medical expenses and lost wages resulting from that injury. Nor was there any real issue regarding the medical expenses and lost wages associated with the second surgery. However, Holmes' expert testified that the problems associated with the C4–5 disk were attributable to Ms. Posner's carrying several chairs up three flights of stairs, not to the automobile collision on which she based her claim. The expert conceded that there was a bulge in the disk before that time, but maintained, relying on Dr. Kahanovitz's records, that the bulge was asymptomatic until she further injured the disk by carrying the chairs. The jury was entitled to credit that testimony and to disregard that of Ms. Posner's expert, who opined that the C4–5 injury was the proximate result of the automobile collision. "The jury is entitled to exercise considerable judgment in determining the weight to be given to such evidence." *Hughes v. Pender,* 391 A.2d 259, 264 (D.C.1978). From the amount of the verdict, it appears that the jury gave dispositive weight to the testimony of Ms. Posner's expert, which it had a right to do.

Like *Shomaker,* this case is closer on its facts to *Jefferson v. Ourisman Chevrolet Co.* than it is to *Barron* and *Bernard.* In *Jefferson,* which also involved an automobile accident, the parties stipulated that the defendants were negligent and that the plaintiff's medical bills were reasonable. The only issue that remained was the amount of damages that should be awarded to the plaintiff for injuries resulting from the accident. The defendants contested only the issue of proximate cause, arguing that "[t]he fact that Mr. Jefferson obtained the treatment does not necessarily establish the fact that he needed the treatment as a result of the collision at

issue in this case." 615 A.2d at 583 (quoting the trial court's order). The defense experts testified that the plaintiff's injuries were not attributable to the accident, and the jury apparently credited their testimony, as it was entitled to do. We therefore upheld the jury's verdict awarding the plaintiff no damages.

In this case, we assume for present purposes that approximately half of Ms. Posner's total out-of-pocket expenses were attributable to the accident and the first surgery.[4] Her total expenses for that injury and its treatment would therefore be in the neighborhood of $53,964.27, or perhaps a little more because of the infection. Thus, out of the $80,000 verdict, $26,035.73 would be for pain and suffering and permanent injuries. Such an award is certainly more than nominal, quite unlike the award of $38.60 in *Barron.* From the record before us, we conclude that the jury must have found that the C4–5 injury and the ensuing surgery, lost wages, and pain and suffering were not proximately caused by the automobile accident, and hence that Mr. Holmes should not have to pay Ms. Posner any damages associated with the C4–5 injury. At the very least, that is a reasonable interpretation of the verdict, which refutes the contention that the jury disregarded its fact-finding role.

■ Ms. Posner also argues that the verdict was inadequate because the jury considered an improper factor when it calculated the amount of damages. According to Ms. Posner, three members of the jury admitted during post-trial discussions that they had disregarded the jury instruction regarding concurrent causes. *See* STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 5–13 (1998 rev. ed.).[5] The jurors allegedly admitted

---

4. We base this assumption on the evidence that the two surgeries were substantially similar, and that the main difference between them was that an infection (necessitating some, but not much, additional treatment) developed after the first but not the second.

5. Instruction No. 5–13 states:

 There may be more than one proximate cause of an injury. That is, several factors or circumstances, or the negligent acts or omissions of two or more persons, may work at the same time, either independently

that they did not award a larger sum because they thought that Dr. Kahanovitz had possibly committed medical malpractice. According to Ms. Posner, these jurors did not believe that Mr. Hughes should pay for that malpractice, and they assumed that Ms. Posner had filed a medical malpractice claim against Dr. Kahanovitz.

 As a general rule, "a party cannot impeach a jury verdict by evidence given by the jurors." *Henderson v. District of Columbia,* 493 A.2d 982, 998 (D.C.1985). As we said in *Sellars v. United States,* 401 A.2d 974 (D.C.1979):

> Courts consistently have exercised great caution in allowing jurors to impeach their verdicts. This caution is amply warranted for several reasons:
>
> > (1) discouraging harassment of jurors by losing parties eager to have the verdict set aside; (2) encouraging free and open discussion among jurors; (3) reducing incentives for jury tampering; (4) promoting verdict finality; [and] (5) maintaining the viability of the jury as a judicial decision-making body.

*Id.* at 981 (citations omitted); *accord, Boykins v. United States,* 702 A.2d 1242, 1247 (D.C.1997). There are some exceptions to this rule, but "a wide range of jury behavior still provides no valid basis for impeachment based upon the jurors' own evidence." *Sellars,* 401 A.2d at 981.

---

or together, to cause an injury. Each of the contributing acts or omissions is regarded in law as a proximate cause. This is true regardless of whether one of the participating acts or omissions contributed more than another to causing the injury. Each person whose negligent act or omission is a proximate cause of an injury is liable for the resulting injury.

To support her claim of jury impropriety, Ms. Posner has offered only unsworn, uncorroborated statements which three jurors allegedly made to her or her attorneys. She cites no exception to the general rule prohibiting jurors from impeaching their own verdict after a trial, and we can think of none. We therefore find her argument without merit.

### III

There is nothing in the record to indicate that the jury's verdict was based on "prejudice, passion, or partiality, or that it must have been based on oversight, mistake, or consideration of an improper element, or that the verdict ... is contrary to all reason." *Jefferson,* 615 A.2d at 586 (internal quotation marks and citations omitted); *see Shomaker,* 669 A.2d at 1297. Because there was evidence from which the jury could reasonably find that some of Ms. Posner's injuries were not proximately caused by the accident, we hold that the trial court did not abuse its discretion when it denied her motion for a new trial. The judgment is therefore

*Affirmed.*

---

It is no defense that some other person who is not a defendant in this lawsuit participated in causing the injury, even if it should appear to you that the negligence of the other person was greater than the negligence of the defendant.